UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MENACHEM KUSHNERSKI, | CASE NO. 1:18CV1229 |
| Plaintiff, | |
| v. | UNITED STATES MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Menachem Kushnerski ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, Plaintiff's sole assertion of error is that the ALJ erred by failing to afford great weight to the opinion of his treating psychiatrist, Dr. Goldman. ECF Dkt. #14. For the following reasons, the Court REVERSES the decision of the ALJ and REMANDS Plaintiff's case to the ALJ for reevaluation and analysis of Dr. Goldman's opinion.

I.  **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on March 10, 2015, alleging disability beginning June 14, 2008 due to "depression, neurotic back pain, sharp back pain, paralyze, osteorheumatism, chronic fatigue, memory problem, insomnia, dizziness, weakness, anxiety, discomfort in the head." ECF Dkt. #11 ("Tr.") at 155, 214.[2] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. *Id.* at 78, 93-112. Plaintiff requested a hearing before

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

an ALJ, and the ALJ held a hearing on April 26, 2017, where Plaintiff was represented by counsel and testified. *Id*. at 39-53, 113. A vocational expert ("VE") also testified. *Id.* at 53-59.

On September 13, 2017, the ALJ issued a decision denying Plaintiff's application for DIB. Tr. at 15-26. Plaintiff requested that the Appeals Council review the ALJ's decision and the Appeals Council denied his request for review on April 10, 2018. *Id*. at 1-9.

On May 31, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. He filed a merits brief on October 12, 2018 and Defendant filed a merits brief on December 13, 2018. ECF Dkt. #s 14, 16.

## II.  RELEVANT PORTIONS OF ALJ'S DECISION

On September 13, 2017, the ALJ issued a decision first noting that at the ALJ hearing, Plaintiff amended his alleged disability onset date to January 1, 2014. Tr. at 15. He found that Plaintiff met the insured status requirements through December 31, 2018 and he had not engaged in substantial gainful activity since his amended onset date. *Id.* at 17. The ALJ further found that since that date, Plaintiff had the severe impairments of: degenerative disc disease; myofascial pain dysfunction disorder; chronic pain syndrome; major depressive disorder; schizophrenia; and generalized anxiety disorder ("GAD"). *Id*. at 18. He found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* at 18-19. After considering the record, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: he can never climb ladders, ropes and scaffolds; he can frequently climb ramps and stairs, and kneel and crouch; he can occasionally stoop and crawl; no work at unprotected heights; occasional work in extreme and vibration; he can perform simple tasks, but not at a production rate pace; he can frequently interact with supervisors and co-workers, but can only occasionally interact with the public; and he can tolerate routine workplace changes. *Id.* at 20.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff could not return to his past relevant work as an artist/calligrapher or assistant rabbi, but he could perform jobs existing in significant numbers in the national economy, such as a warehouse checker, merchandise marker, or an electronics worker. Tr. at 25-26. In

conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of the decision. *Id.* at 26.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V. LAW AND ANALYSIS

In his sole claim of error, Plaintiff asserts that the ALJ erred by failing to attribute great weight to the opinion of Dr. Goldman, his treating psychiatrist. ECF Dkt. #14 at 9-14. For the following reasons, the Court finds that substantial evidence does not support the ALJ decision to discount Dr. Goldman's opinion because the ALJ failed to provide good reasons for doing so.

An ALJ must give controlling weight to the opinion of a treating source if he finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons"**[3]** for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence." Https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). That Court has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

In his July 26, 2016 Mental Residual Functional Capacity ("MRFC") Questionnaire, Dr. Goldman indicated his diagnoses for Plaintiff as schizophrenia, GAD, and obsessive-compulsive disorder. Tr. at 550. He rated Plaintiff's global assessment of functioning at 35, indicative of some

impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Tr. at 550. He listed Plaintiff's medication as Seroquel XR and identified side effects from the medication as dizziness, drowsiness, fatigue, and stomach upset. *Id.* Dr. Goldman handwrote the clinical findings that demonstrated the severity of Plaintiff's mental impairment and symptoms, but most are illegible. He opined that Plaintiff's prognosis was guarded. *Id.* He then check-marked a number of signs and symptoms that Plaintiff experienced, including: loss of interest; decreased energy; blunt, flat or inappropriate affect; distractibility; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; paranoid thinking or inappropriate suspiciousness; recurrent obsessions or compulsions; recurrent and intrusive recollections of a traumatic experience which are a source of marked distress; withdrawal or isolation; perceptual or thinking disturbances; hallucinations or delusions; illogical thinking; seclusiveness or autistic thinking; emotional lability; easy distractibility; sleep disturbance; recurrent severe panic attacks; and a history of multiple physical symptoms (for which there are no organic findings) of several years duration beginning before age 30, that have caused the individual to take medicine frequently, see a physician often, and alter life patterns significantly. *Id.* at 551.

Dr. Goldman further check-marked the following mental abilities as being "seriously limited, but not precluded", which was defined by the form as "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances": understanding, remembering, and carrying out very short and simple instructions; interacting appropriately with the general public; maintaining socially appropriate behavior; adhering to basic standards of neatness and cleanliness; and traveling in unfamiliar places. Tr. at 552-553. He check-marked the following mental abilities as "unable to meet competitive standards," which was defined by the form as "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting": remembering work-like procedures; maintaining attention for two hour segment[s]; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; and being aware of normal hazards and taking appropriate

precautions. *Id*. Dr. Goldman also check-marked the following mental abilities of Plaintiff as having "no useful ability to function," which was defined on the form as "an extreme limitation, means your patient cannot perform this activity in a regular work setting": maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being unduly distracted; accepting instructions and responding appropriately to criticism from supervisors; dealing with normal work stress; understanding, remembering, and carrying out detailed instructions; setting realistic goals or making plans independently of others; and dealing with the stress of semi-skilled and skilled work. *Id.* Dr. Goldman further check-marked that Plaintiff had "limited but satisfactory" mental abilities to ask simple questions or request assistance, and to use public transportation. *Id.*

Dr. Goldman check-marked "Yes" in response to the question as to whether Plaintiff's psychiatric condition exacerbated his pain or other physical symptoms. Tr. at 554. He also checked that Plaintiff's impairments/treatment would cause him to miss more than four days of work per month. *Id.* He further checked that Plaintiff's impairments lasted/are expected to last at least 12 months, Plaintiff was not a malingerer, and his impairments were reasonably consistent with the symptoms and functional limitations he stated. *Id*. He described Plaintiff as "very paranoid." *Id*.

The specific section of the ALJ's decision in which he reviews Dr. Goldman's opinion and attributes it only little weight is sparse and inadequate. Tr. at 24. The ALJ spends nine of ten sentences in this section outlining Dr. Goldman's opinion and then explains in one sentence that he was giving the opinion little weight because Plaintiff "received conservative mental health care and that medications have helped." Tr. at 24, citing Tr. at 528. The ALJ then proceeds to the next paragraph, explaining that he is giving no weight to Dr. Goldman's comment in a treatment note that Plaintiff was disabled and unable to work because it is the ALJ who determines disability and this comment was not consistent with Dr. Goldman's treatment notes and the record as a whole. Tr. at 24, citing Tr. at 588. The Court finds that the ALJ failed to sufficiently explain why he discounted Dr. Goldman's opinion and how those reasons affected the weight afforded to his opinion.

It is true that the ALJ is not required to conduct a factor-by-factor exhaustive analysis of all of the factors of 20 C.F.R. § 404.1527 (e.g., length of treatment relationship and frequency of

examination, nature and extent of treatment relationship, supportability, consistency, specialization) in his decision when determining the amount of weight to give a treating source's opinion when he affords it less than controlling weight. *Francis v. Comm'r of Soc. Sec. Admin.,* No. 09-6263, 414 Fed. App'x 802, 804, 2011 WL 915719 (6th Cir. Mar. 16, 2011). Moreover, conservative treatment is a factor that the ALJ can consider when determining the weight to give to a treating source's opinion. *Lester v. Soc. Sec. Admin*, 596 Fed. App'x 387, 389 (6th Cir. 2015). It is also the ALJ who determines disability and no special significance is given to a treating physician's opinion on these issues. 20 C.F.R. § 404.1527.

However, the ALJ has not sufficiently explained why he afforded Dr. Goldman's opinion little weight when he only mentioned that Plaintiff received conservative mental health treatment and medications were helping him. And even reviewing the ALJ's decision as a whole, he has still failed to provide sufficient good reasons for attributing little weight to Dr. Goldman's opinion. The Court notes that in a preceding part of his decision, the ALJ cites to Plaintiff's reports to his doctors that the medications that he took for his mental health symptoms were helping. Tr. at 22-24, citing Tr. at 517, 527, 583. However, these same treatment notes cited by the ALJ show more than just a report by Plaintiff that medications were helping. One of the treatment notes that the ALJ cited to is from Dr Goldman, and he indicated that he examined Plaintiff on March 21, 2016 and Plaintiff reported feeling better, but Dr. Goldman also noted that Plaintiff's mood was depressed, irritable and anxious, his thought process was tangential, he had paranoia and auditory hallucinations, he thought that people were listening to him, and he was distractible with impaired cognition. *Id*. at 516-517. Dr. Goldman also indicated that Plaintiff had only a partial response to treatment and a prior medication dosage reduction was unsuccessful. *Id*. at 517. The second note cited by the ALJ is dated April 7, 2016 from Dr. Itin, a neurologist, in which he reported that Plaintiff thought that Seroquel, a medication he was taking for his mental health symptoms, was "terrific" as he was sleeping better and his negative thinking was better. Tr. at 556. However, the ALJ does not address the treatment notes from Dr. Goldman around the same date where Dr. Goldman indicated that Plaintiff presented to him on May 16, 2016 as guarded and suspicious, with a depressed, irritable, and anxious mood, a tangential thought process, paranoia, auditory hallucinations, delusions, and

-8-

impaired cognition. *Id.* at 533. Dr. Goldman's July 26, 2016 treatment notes indicate the same findings. *Id*. at 556. And the last citation by the ALJ to reports that medications were helping to control Plaintiff's depression was another note from Dr. Itin dated November 30, 2016, in which Dr. Itin indicated that Plaintiff's depression seemed to be under better control. Tr. at 22, citing Tr. at 583. The ALJ does not address treatment notes from Dr. Goldman dated December 14, 2016 in which he found that Plaintiff was again depressed and anxious, with paranoia and delusions, auditory hallucinations, distractible concentration, and impaired cognition. *Id*. at 587. Again, Dr. Goldman indicated that Plaintiff had a partial response to treatment and he continued Plaintiff's medication. *Id*. at 588. He also indicated in this treatment note that Plaintiff was unable to work and was disabled. *Id*. Thus, while the ALJ mentioned these particular treatment notes, the Court is unsure whether he selected only supportive portions of the notes to support his position or whether he overlooked the rest of the omitted evidence.

The Court is also aware that the ALJ cited to evidence in the rest of the record which shows that Plaintiff initially refused medication for his mental health symptoms and he refused referrals to a psychiatrist. Tr. at 21, citing Tr. at 257-261. The ALJ cited to an October 8, 2014 treatment note which indicated that Plaintiff did not want to take medications for his depression and anxiety and he declined an evaluation as to these conditions, stating that these conditions were well-controlled. *Id.* at 282. The ALJ also cited to a November 26, 2014 note from Plaintiff's primary care physician in which she notes that Plaintiff "is pretty fixated on getting disability, and not very willing to try things that will make him better, and possibly able to work, such as PT and antidepressants." Tr. at 21, citing Tr. at 259. The ALJ indicated that Plaintiff did eventually accept a referral to psychiatry, but treatment notes showed that Plaintiff could not make the appointment that was scheduled, and treatment notes dated January 2, 2015 indicate that Plaintiff had still not gone to see the psychiatrist. *Id*. at 257, 282, 284. The ALJ further cited to treatment notes indicating that once Plaintiff did begin taking medications for his mental health conditions in 2016 and receiving psychiatric care, he reported improvement and seemed better. Tr. at 22, citing Tr. at 583. Plaintiff reported to his doctor on November 30, 2016 that the medication "made a huge impact

on his depression." *Id.* at 581. Plaintiff's recurrent major depressive disorder was labeled as in partial remission on this date. *Id*. at 584.

While these findings may have an impact on Dr. Goldman's opinion, Plaintiff's credibility and the overall decision of whether Plaintiff is disabled, the Court finds that the most important evaluation and analysis by the ALJ is of Dr. Goldman's opinion and his treatment notes. The ALJ has not shown that he considered all of Dr. Goldman's treatment notes or all parts of those notes in conjunction with Dr. Goldman's opinion, especially when it appears that the ALJ merely selected the parts of the treatment notes that supported his decision. This leads the Court to remand the instant case for complete evaluation and explanation by the ALJ of Dr. Goldman's opinion and an explanation of how the ALJ's reasons for affording the weight that he attributes to Dr. Goldman's opinion affected the weight that he gives to Dr. Goldman's opinion. If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

A court can find that the ALJ's violation of the good reasons rule is harmless error if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though [s]he has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir.2010) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). In this case, Dr. Goldman's opinion is not patently deficient, the ALJ did not adopt Dr. Goldman's opinion or make findings consistent with it, and the ALJ did not meet the goal of § 1527(d)(2). Accordingly, the ALJ's violation of the good reasons rule is not harmless error and this case must be remanded.

## VI.    CONCLUSION

For the above reasons, the Court REVERSES the decision of the ALJ and REMANDS this case for reevaluation and analysis of Dr. Goldman's opinion and proper application of the treating physician rule.

Date: August 29, 2019                    */s/George J. Limbert*
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE